**MICHAEL I. INZELBUCH, ESQUIRE**
**I.D. No.: 5635**
**1340 West County Line Road**
**Lakewood, New Jersey 08701**
**Phone: 1-732-905-0325 / Fax: 1-732-905-5872**
**E-Mail: michael@inzelbuchlaw.com**
**Attorney for Plaintiffs, C.E. & Y.Z. o/b/o R.E.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| **C.E. & Y.Z. o/b/o R.E.,** | **No.: 3:24-cv-07985** |
| **Plaintiffs,** | **Judge _____** |
| **v.** | **VERIFIED COMPLAINT** |
| **TOMS RIVER REGIONAL SCHOOL DISTRICT BOARD OF EDUCATION** | |
| **Defendants.** | |

_____

C.E. and Y.Z. (together, "Plaintiffs"), on behalf of their minor child, R.E., by their attorney,

Michael I. Inzelbuch, Esq., hereby file this Complaint against the Toms River Regional School

District Board ("Defendant") and in support of same state as follows:

## PARTIES

1.    R.E. is an eight-year-old child (DOB: June 1, 2016) who resides with Plaintiffs

within the District. R.E. is classified as Eligible for Special Education and Related Services under

the category "Autism."

2.    Plaintiffs C.E. and Y.Z. are R.E.'s parents. The family resides within the boundaries of the Toms River Regional School District.

3.    Plaintiffs, although well known to Defendant and their counsel, are not expressly named herein because of the privacy guarantees provided by the Individual with Disabilities Education Improvement Act (IDEIA), 20 U.S.C. § 1400 *et seq.*, as well as the Family Educational Rights Act, 20 U.S.C. § 1232g, and 34 C.F.R., part 99.

4.    Defendant the Toms River Regional School District Board of Education (Board or District), upon information and belief, is the legal body that has oversight responsibility for the Toms River Regional School District, New Jersey, public school system, including the administration of its special education programs.  The Board's business address is 1144 Hopper Avenue, Toms River, NJ 08753.

5.    Defendant is a "Local Education Agency" as defined in 20 U.S.C. § 1401(19)(a). Defendant is responsible for providing a Free Appropriate Public Education ("FAPE") as defined in 20 U.S.C. § 1401(9) to students with disabilities residing in the Toms River Regional School District ("the District").

6.    Pursuant to the provisions of the Individuals with Disabilities Education Act (20 U.S.C. § 1401, *et. seq.*) ("IDEA"), Defendant is required to provide appropriate and *individualized* special education and related services to R.E.

## JURISDICTION AND VENUE

7.    This action seeking *de novo* review and reversal of the May 22, 2024 "FINAL DECISION" ("the Decision") of the Honorable Elaine B. Frick ("Judge Frick"), Administrative Law Judge ("ALJ") of the New Jersey Office of Administrative Law ("NJOAL"), is brought

pursuant to 20 U.S.C. § 1415(i)(2)(A) and New Jersey Administrative Code 6A:14-2.7(v). A copy of the "FINAL DECISION" (**EXHIBIT "A"**).

8.    Jurisdiction is proper under 20 U.S.C. § 1415, and 28 U.S.C. §§ 1331, 1367, and 2201.

9.    Venue is proper under 28 U.S.C. § 1391(b), as Plaintiffs and Defendant all reside or are situated within the District.

## FACTS

10.    R.E. has been diagnosed with Autism, Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), Anxiety, Turner Syndrome (a rare chromosomal disorder), and significant learning issues.

11.    R.E. was scheduled to attend Kindergarten during the 2021-2022 school year.

12.    On April 27, 2021, Y.Z. contacted Defendant's pre-school secretary Yesenia Newcomb ("Newcomb") by e-mail in hopes of beginning an evaluation process for R.E. Y.Z. informed Newcomb that R.E. is not capable of attending school in a regular classroom and provided documentation of R.E.'s disabilities. (**EXHIBIT "B"**)

13.    Petitioners registered R.E. in the District on May 24, 2021.

14.    On or about July 5/6, 2021, the mother of R.E., again, communicated via e-mail with Defendant District's pre-school secretary (Yesenia Newcomb) advising, in part, that, ". . .Dr. Elane Zakhal of the Children's Hospital of Philadelphia ("CHOP") has just informed us that (R.E.) has Turner Syndrome. We had done the genetic testing months ago and were waiting on the results. Just wanted to add the inform to her medical history. Thank you." (**EXHIBIT "C"**)

15.    At <u>no</u> time did Ms. Newcomb, nor any other representative of the District, inquire into the nature or symptoms of Turner Syndrome, or any of R.E.'s other significant diagnoses, ask

about how they might impact her ability to learn, or request any other documentation or information about R.E.'s diagnoses or *individualized* needs.

16.    Despite Case Manager Kelly McNamara's express representation to Plaintiffs via e-mail communications of August 20, 2021 and August 23, 2021 that she would include R.E.'s Turner Syndrome diagnosis in the Individual Education Plan ("IEP"), she did not do so. The IEP developed for R.E. by Defendant contains no services to specifically address the challenges to her learning caused by Turner Syndrome or any of her other diagnoses. (**EXHIBIT "D"**)

17.    Prior to formulating the IEP, the District completed *only* three evaluations of R.E: a Social History Assessment, an Occupational Therapy Evaluation, and a Speech and Language Evaluation.  As no Educational Evaluation and no Psychological Evaluation were performed, the District developed the IEP without the benefit of any current information regarding R.E.'s academic potential and/or achievement levels.

18.    At a meeting on August 16, 2021, the District proffered an IEP for R.E. to Plaintiffs. At the top of the first page of the IEP, the following notation appeared: "Additional Goals and Objectives will be determined by ABLLS [Assessment of Basic Learning and Language Skills] when completed by her teacher in September."

19.    Defendant proposed to implement the IEP, which called for use of Applied Behavior Analysis ("ABA"), beginning on September 8, 2021. Y.Z. immediately expressed that such a program would not be appropriate for R.E. because of her inability to self-regulate and to sit still for long periods of time, making R.E. sit in a confined area all day for one-on-one services (as called for by ABA) was not a viable option.  The District, *for the first time*, represented that it would not consider R.E.'s Turner Syndrome diagnosis in connection with her educational plan until formal medical documentation of same was produced by the parents.  Also at this meeting,

the mother of R.E. requested that she be allowed to observe the classroom into which Defendant District planned to place R.E.

20.    On August 27, 2021, Petitioner received an e-mail from McNamara stating that the teacher in R.E.'s proposed classroom would not have specific information as to R.E. so as to be able to meaningfully discuss R.E.'s *individualized* needs until the parents would execute the IEP document for implementation (**EXHIBIT "E"**).

21.    As the mother of R.E. desired to collaborate and discuss R.E.'s *individualized* needs with the proposed teacher, she executed the IEP document as instructed to do by the District with an added notation regarding her request to conduct an observation of the proposed classroom. Specifically, the mother of R.E. checked the box indicating that she consented to the proposed initial IEP for services to be implemented, however,  inserted the following language above her signature, "However, I continue to have concerns and look forward to an observation." (**EXHIBIT "F"**)

22.    On September 24, 2021, Y.Z. was allowed to observe a classroom being taught by Special Education Teacher Nicole Agathangelo ("Agathangelo"),  the classroom in to which the District proposed to place R.E.  Y.Z. was accompanied by Education Consultant Susan K. Caplan, M.Ed., LDT-C ("Caplan").   Y.Z. observed that two of the students in the classroom were completely non-verbal and the other two had very limited language ability.  Y.Z. rejected Agathangelo's class as a placement for R.E., in part because R.E. would have no peers in the room with whom to practice or improve her social and language skills.

23.    On October 8, 2021, the District permitted Y.Z. and Caplan to observe a different classroom. During this time, the children were supposed to be singing the days of the week. However, Y.Z. noted that they were yelling rather than singing. Y.Z. was concerned because

yelling can cause R.E. to dysregulate and, also, Caplan observed the material being taught by the teacher was very far above R.E.'s academic level.

24.    That same day, the District showed Y.Z. and Caplan a third Autism classroom. Although a case manager told them that two of the four students in the room were verbal, Y.Z. never observed any student speak. The group was supposed to be counting to twenty along with a video that was playing on a wall.  However, the students were not looking at the video. One student stood at a table making meaningless noises while another climbed up to the top of the table.

25.    *Only after* personally observing the settings and programing that the District had planned for R.E., Plaintiffs contacted the New Jersey Department of Education approved School for Children with Hidden Intelligence ("SCHI"), located in Lakewood, New Jersey.[1]

26.    Plaintiff's submitted an application for R.E. to attend the New Jersey Department of Education ("NJDOE") SCHI School wherein R.E. was accepted and commenced attendance on or about October 11, 2021, almost six (6) months <u>after</u> Plaintiffs enrolled R.E. within the Toms River Regional Public School District and only <u>after</u> the District themselves, in the opinion of the parents, proved that they were **in**capable of providing R.E. with a Free and Appropriate Public Education ("FAPE") that she was entitled to receive with the appropriate supports and services to meet her significant *individualized* needs.

27.    On October 12, 2021, the mother of R.E. communicated with the Defendant District and advised that she <u>continued to have significant concerns</u> about the program and placement proposed for R.E. As the parents had made it well known to the Defendant District, one (1) of their primary concerns was the District's intention to group R.E. with non-verbal children which was <u>not</u> appropriate for R.E. and which *may* have caused significant regression from any progress that

---

[1] The New Jersey Department of Education ("NJDOE") approved SCHI School is located less  than five (5) miles from R.E.'s home.

R.E. had made. Plaintiffs were <u>not</u> willing to allow for this to occur with the parents advising the District that they could no longer delay R.E.'s education any further and that she would be "auditing" at the New Jersey Department of Education ("NJDOE") approved SCHI School.

28.    Plaintiffs filed a Due Process Petition against Defendant on or about January 6, 2022. (**EXHIBIT "G"** without Exhibits)

29.    On January 18, 2022 the Defendant District filed an Answer (**EXHIBIT "H"**) to the aforementioned January 6, 2022 Due Process Petition, requesting a declaration that the District had offered a Free and Appropriate Public Education ("FAPE") in the Least Restrictive Environment ("LRE") that appropriately meet R.E.'s educational needs, and that the IEP it offered was appropriate.

30.    A Hearing was held at the Mercerville Office of Administrative Law before the Honorable Elaine B. Frick, ALJ on June 22, 2022; July 11, 2022; August 15, 2022; September 30, 2022; January 4, 2023; March 28, 2023; May 5, 2023; July 26, 2023; December 5th, 2023; and January 8, 2024.

31.    The following witnesses were called by Defendant and gave testimony at the Hearing Kelly McNamara (Case Manager and LDT-C); Karen Rieser, MA, CCC-SLP (Speech Therapist); Jennifer Viola, MS, OTR/L (Occupational Therapist); Renee Verdon (LDT-C and Case Manager); and Kelly Umbach (Supervisor). All of Defendant witnesses were fact witnesses other than Karen Rieser who was presented as an expert in Speech Therapy and Jennifer Viola who was presented as an expert in Occupational Therapy. Please note that there was <u>no</u> expert in special education and/or compilation of IEPs and/or a Learning Disabilities Teacher Consultant ("LDT-C") presented by the District.

32.    The following witnesses were called by Plaintiffs and gave testimony at the Hearing: Michelle Stern, LDT-C; Melanie Feller, MA, CCC-SLP, DIR-C, IMH-E; Special Education Teacher Nicole Agathangelo; Susan K. Caplan, M.Ed., LDT-C; R.E.'s mother Y.Z.; Supervisor Kelly Umbach; Case Manager Kelly McNamara; and pre-school secretary Yesina Newcomb. *Unlike* Defendants, Susan K. Caplan, M.Ed., LDT-C, was accepted as an expert in Special Education and as a Learning Disabilities Teacher Consultant ("LDT-C"); Melanie Feller, MA, CCC-SLP, DIR-C, IMH-E, was accepted as an expert in Speech and Language, Special Education, and DIR Floortime; and Michelle Stern, MA, LDT-C, was accepted as an expert in Special Education, Learning Disabilities Teacher Consultant ("LDT-C"), and a Case Manager with an emphasis on writing IEPs and the administration of testing.

33.    On May 22, 2024, The Honorable Elaine B. Frick, ALJ, issued a "FINAL DECISION" denying the relief sought by Plaintiffs.

## CLAIMS FOR RELIEF

### Count I

### (Violation of "Child Find" Requirements)

34.    Plaintiffs reallege all of the above paragraphs as if fully set forth herein.

35.    R.E. is considered a "disabled" child and is entitled to the protections of the Individuals with Disabilities Education Act ("IDEA") and New Jersey State law.

36.    Defendant, as a public school district in the State of New Jersey, is required to abide by all provisions of the Individuals with Disabilities Education Act ("IDEA").

37.    Under the Individuals with Disabilities Education Act ("IDEA") and New Jersey State law, Defendant District is charged with a duty to identify, locate, and evaluate all children with disabilities who are in need of special education and related services. 20 U.S.C. §

1412(a)(3)(A); N.J. Admin. Code § 6A:14-1.2(b)(3). Defendant District must then provide a Free and Appropriate Public Education ("FAPE") via the implantation of an appropriate IEP, to those children who qualify.

38.    A school district has a duty to evaluate a child for a disability upon notice of behavior that is likely to indicate a disability. *D.K. v. Abington Sch. Dist.*, 396 F.3d 233, 250 (3d Cir. 2012) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 271 (3d Cir. 2009)). The district must assess the child "in *all areas of suspected disability*." 20 U.S.C. § 1414(b)(3)(B) (emphasis added). When a school district violates this obligation by failing to identify a student with a disability, and thus provides no specialized instruction to the student to meet the unique needs of his/her disability, the student has been denied a Free and Appropriate Public Education ("FAPE"). *M.S. v. Randolph Bd. of Educ.*, No. 18-13029, 2019 BL 373003, 2019 Us Dist Lexis 169184, 2019 WL 4785742 (D.N.J. September 30, 2019).

39.    Plaintiffs in the instant matter expressly informed  the District, including, but not limited to, Case Manager Kelly McNamara that R.E. was diagnosed with Turner Syndrome, Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiance Disorder ("ODD"), Anxiety, and significant learning issues. During the testimony of Case Manager Kelly McNamara at the Hearing, McNamara admitted that <u>despite</u> being aware that the Children's Hospital of Philadelphia ("CHOP") had diagnosed R.E. with Turner Syndrome, and that R.E. had other disabilities, she made **<u>no attempt whatsoever</u>** to gather information regarding them. (**EXHIBIT "I"**) July 11, 2022, Transcript at 13:8-14:3. Just as importantly, McNamara admitted that she did not add any information about any of R.E.'s Turner Syndrome diagnosis to the IEP that was developed for R.E. <u>despite</u> her express representation and assurances to Plaintiffs that she would do so. (**EXHIBIT "J"**) July 11, 2022, Transcript at 16:11-20.

9

40. Defendant refused to consider anything other than R.E.'s diagnosis of Autism when developing her IEP and when identifying services to be offered. Indeed, McNamara and Defendant effectively dismissed R.E.'s Turner Syndrome, ADHD, ODD, Anxiety and significant learning disabilities diagnoses altogether, *failed* to evaluate R.E.'s potential via Psychological Evaluation, *failed* to evaluate R.E.'s academic levels via an Educational Evaluation, and, thus, *failed* in its "child-find" duty.  As such, Defendant *failed* to identify R.E. as falling under the "Multiple Disabilities" ("MD") classification and instead categorized R.E. under the eligibility category of "Autism." While Autism may be one of R.E.'s diagnosis, it was not the only diagnosis that should have been meaningfully considered by Defendant when developing her IEP.

41. ALJ Frick committed legal error when she issued the Final Order denying Plaintiffs' request for an appropriate IEP for R.E., for reimbursement of the costs associated with R.E.'s attendance at the New Jersey Department of Education ("NJDOE") approved SCHI School wherein R.E. is being provided with a Free and Appropriate Public Education ("FAPE") to meet her significant *individualized* needs and for other relief associated with R.E.'s attendance therein.

42. ALJ Frick's "FINAL DECISION" is a Final Decision reviewable by this Court.

43. Defendant's acts and omissions and ALJ Frick's legal errors have caused, and unless reversed will continue to cause, irreparable harm to Plaintiffs.

## Count II

### (Untimely IEP Based on Insufficient Evaluations)

44. Plaintiffs reallege all of the above paragraphs as if set forth fully herein.Evaluations of children reasonably suspected of having a disability must be sufficient and timely.

45. The Individuals with Disabilities Education Act ("IDEA") requires that when conducting such evaluations, school districts must seek to gain "relevant information" about the

10

"educational needs of the child" to determine if the child needs special education and related services. 20 U.S.C. § 1414(b)(3)(C).

46.    The evaluation must be "administered by trained and knowledgeable personnel," 20 U.S.C. § 1414(b)(3)(A)(iv), who must use "a variety of assessment tools and strategies," *Id.* § 1414(b)(2)(A), along with "technically sound instruments." *Id.* § 1414(b)(2)(C); *see also Id.* § 1414(c)(1)(A) (requiring school districts to review "data on the child" from several different sources). It is not enough for a school district to rely on a "single measure or assessment as the sole criterion," *Id.* § 1414(b)(2)(B), or to use assessment methods in ways that are not "valid and reliable," *Id.* § 1414(b)(3)(A)(iii).

47.    The testimony of Defendant's witnesses established that Defendant chose not to conduct Educational, Psychiatric, or Psychological Evaluations of R.E. prior to developing the IEP.  Instead, Defendant chose to rely on an approximate two (2) year old Psychiatric Evaluation completed by Dr. Sajjad A. Zaidi dated April 25, 20**19** (**EXHIBIT "K"**) as well as an approximate two (2) year old Psychological Evaluation completed by Dr. Anita Elbaz, Psy.D., dated May 10, 20**19** (**EXHIBIT "L"**). No Educational Evaluation was completed by the District, despite such evaluations providing "points of entry as to where to begin educating a child, what skills are in place, and what deficits are present so that appropriate curricular Goals may be completed. (**EXHIBIT "M"**) March 28, 2023 Transcript at 24:6-21.

48.    McNamara admitted that current evaluations are needed in order to provide a Free and Appropriate Public Education ("FAPE") to students with special needs. (**EXHIBIT "N"**) July 11, 2022, Transcript at 42:14-17.  In addition, McNamara admitted that a current Psychiatric Evaluation, in part, should have been conducted to rule out Disruptive Mood Dysregulation Disorder, however, was not. July 11, 2022, Transcript at 34:10-35:21. (**EXHIBIT "O"**)

49.     District representative Jennifer Viola <u>also admitted during her testimony that current</u> <u>information is necessary for evaluations,</u> and that information obtained from the administrators of active treatment to a student add value when determining the Goals and Objectives of that student. (**EXHIBIT "P"**) September 30, 2022 Transcript at 99:25-100:1-11. However, like every other evaluator used by the District, Viola made no effort to seek out current documentation regarding R.E. prior to making determinations for the IEP. **EXHIBIT "Q"**) at 100:12-15.

50.     District representative Karen Rieser testified that her evaluation and observation of R.E. took a combined total of forty (40) minutes. (**EXHIBIT "R"**), August 15, 2022, Transcript at 141:8-24. She acknowledged that she had access to "base line" information about R.E. (information about the duration and frequency of speech and language services previously received) and that this information is important in evaluating a student and his or her needs. However, inexplicably, Reiser did not include this data in her report, nor did she even mention that R.E. had attempted to escape from the evaluation room. (**EXHIBIT "S"**) August 15, 2022, Transcript at 143:4-5; 149:11-19.

51.     Further, <u>N.J.A.C.</u> 6A:14-3.4(f)(4)(i) clearly and unambiguously requires that an initial evaluation of a child must include "[a] minimum of one structured observation by one evaluator in other than a testing setting." This observation is a requirement, it is not optional at the whim of Defendant. Defendant chose not to comply with this legal obligation.  Defendant's witnesses admitted that none of the evaluations that Defendant actually deigned to conduct included an observation of R.E. in a setting other than a testing setting.

52.     Additionally, as regards timeliness, New Jersey regulations are abundantly clear: a school district must have an IEP in place "[a]t the beginning of each school year" for every student who is receiving special education and related services. <u>N.J.A.C.</u> 6A:14-3.7(a)(1). Once a student

has been evaluated and determined eligible for special education, a school board's responsibility is triggered and the district must have an IEP in effect at the beginning of the school year, with no delay. *A.Z. ex rel. M.Z. v. Mahwah Twp. Bd. of Educ.*, No. 04-4003, 2006 Us Dist Lexis 22305, 2006 WL 827791 (D.N.J. Mar. 30, 2006). "It would strain credulity to imagine that the legislature intended that [] parents of a disabled child would enroll that child in a school without a program in place to deal with disabilities that the district has already diagnosed." *Id*.

53.    Notably, at the top of the first page of the District's proffered IEP the Special Notes section of' states that "Additional Goals and Objectives will be determined by ABLLS [Assessment of Basic Learning and Language Skills] when completed by her teacher in September." If portions of IEP must be completed after school starts it is, by definition, incomplete as of the opening of the term.

54.    As stated above, Plaintiffs first contacted Defendant about starting the evaluation process for R.E. (via e-mail to Newcomb) on April 27, 2021. They enrolled R.E. in the District on May 24, 2021. Defendant had more than ample time to complete the required observations and assessments of R.E., and to complete the IEP with the insights provided by those observations and assessments, in time for the opening of school.

55.    By failing to provide R.E. with IEP based on a sufficient evaluation process and in a timely manner, Defendant has denied her a Free and Appropriate Public Education ("FAPE").

56.    ALJ Frick committed legal error when she issued the "FINAL DECISION" denying Plaintiffs' request for an appropriate IEP for R.E., for reimbursement of the costs associated with R.E.'s attendance at the New Jersey Department of Education ("NJDOE") approved SCHI School wherein R.E. is being provided with a Free and Appropriate Public Education ("FAPE"), and for other relief.

57.    ALJ Frick's "FINAL DECISION" is a Final Decision reviewable by this Court.

58.    Defendant's acts and omissions and ALJ Frick's legal errors have caused, and unless reversed will continue to cause, irreparable harm to Plaintiffs.


**Count III**

**[*Failure* To Formulate and Implement an IEP That Provides a Free and Appropriate Public Education ("FAPE")]**

59.    Plaintiffs reallege all of the above paragraphs as if fully set forth herein.

60.    The IEP is "the centerpiece of the [IDEA]'s delivery system for disabled children." *Endrew F. ex rel. Joseph F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (quoting *Honing v. Doe*, 484 U.S. 305, 311 (1988)).

61.    An appropriate IEP is individualized and tailored to the *individualized* needs of the student. 20 U.S.C. § 1414(d).

62.    The IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 403. Further, <u>N.J.A.C.</u> 6A:14-3.7(e) requires that the child's current level of academic achievement and functional performance be contained within an IEP.

63.    In order to formulate an IEP that meets the above requirements, a child's current level of, and future potential for, academic achievement must be considered. At the Hearing, Caplan was qualified as an expert in Special Education and a Learning Disabilities Teacher Consultant ("LDT-C") opined that Educational Evaluations provide insight into a child's current achievement level while Psychological Evaluations show a child's potential. (**EXHIBIT "T"**) May 5, 2023 Transcript at 80:5-11. The expert opinion was <u>not</u> contradicted by any witness or

other evidence offered by Defendant District. Moreover, at the Hearing, Stern was qualified as an expert in Special Education, a Learning Disabilities Teacher Consultant ("LDT-C"), and a Case Manager with an emphasis on writing IEPs and the administration of testing opined that an educational evaluation should be completed prior to an initial IEP being developed. (**EXHIBIT "U"**) May 28, 2023 Transcript at 24:6-21.

64.    Defendant performed neither an Educational Evaluation nor a Psychological Evaluation in this case. Thus, the IEP developed for R.E. by Defendant is not *individualized*, it is not tailored to R.E.'s specific needs, it is not reasonably calculated to enable R.E. to progress appropriately in light of her circumstances, and the explicit requirements of N.J.A.C. 6A:14-3.7(e) have not been met.

65.    ALJ Frick acknowledged the importance of the IEP within the "FINAL DECISION", however, erred in concluding that Defendant District has met its statutory and regulatory obligation to provide R.E. with a Free and Appropriate Public Education ("FAPE").

66.    ALJ Frick further erred by placing the burden of requesting and ensuring the completion of a complete and thorough evaluation of R.E. upon Plaintiffs rather than on Defendant with whom the burden rightfully rests.

67.    By *failing* to provide R.E. with a Free and Appropriate Public Education ("FAPE"), Defendant has violated, and will continue to violate, Plaintiffs' rights under the Individuals with Disabilities Education Act ("IDEA").

68.    ALJ Frick committed legal error when issuing the "FINAL DECISION" denying Plaintiffs' request for an appropriate and *individualized* IEP for R.E., for reimbursement of the costs associated with R.E.'s attendance at the New Jersey Department of Education ("NJDOE")

approved SCHI School  wherein R.E. is being provided with a Free and Appropriate Public Education ("FAPE"), and for other relief.

69.    ALJ Frick's "FINAL DECISION" is a Final Decision reviewable by this Court.

70.    Defendant's acts and omissions and ALJ Frick's legal errors have caused, and, unless reversed, will continue to cause, irreparable harm to Plaintiffs.

**Count IV**

**(The "FINAL DECISION" Is <u>Not</u> Supported By Substantial Evidence)**

71.    Plaintiffs reallege all of the above paragraphs as if fully set forth herein.

72.    "An appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." *In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need*, 194 N.J. 413 , 422 , 945 A.2d 692 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." *In re Arenas*, 385 N.J. Super. 440 , 443-44 , 897 A.2d 442 (App. Div. 2006).

73.    Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion," and "evidence furnishing a reasonable basis for the agency's action." *Blanchard v. N.J. Dep't of Corr.*, 461 N.J. Super. 231, 238 (App. Div. 2019) (quoting *Figueroa v. N.J. Dep't of Corr.*, 414 N.J. Super. 186, 192 (App. Div. 2010))

74.    ALJ Frick's "FINAL DECISION" is <u>not</u>  supported by substantial evidence.  In reaching her "FINAL DECISION" in favor of the Defendant District, ALJ Frick makes extensive findings regarding her assessment of the relative credibility of the witnesses who testified on behalf

16

of the parties. ALJ Frick finds Defendant's witnesses to be more credible than Plaintiffs' and seems to rest her determination largely on this assessment.

75.    However, the relative credibility of the witnesses is wholly irrelevant to the determination of this case. Based solely upon the testimony of Defendant's witnesses, whom ALJ Frick finds credible, Defendant has <u>not</u> met its obligation to provide a Free and Appropriate Public Education ("FAPE") to R.E.

76.    It is <u>un</u>disputed that the Defendant District *failed* to have R.E.'s IEP in place at the opening of the school year as required by <u>N.J.A.C.</u> 6A:14-3.7(a)(1) and existing case law.

77.    It is <u>un</u>disputed that the Defendant District *failed* to observe R.E. in a setting other than a testing setting in contravention of <u>N.J.A.C.</u> 6A:14-3.4(f)(4)(i)

78.    It is <u>un</u>disputed that the Defendant District *failed* to make any assessment of R.E.'s current academic achievement and potential prior to formulating what purports to be an "Individualized Education Program" ("IEP") tailored to R.E.'s *individualized* needs.

79.    It is <u>un</u>disputed that the Defendant District *failed* to so much as acknowledge, much less appropriately consider, R.E. diagnosis of Turner Syndrome when developing an IEP for R.E.

80.    It is <u>un</u>disputed that the Defendant District *failed* to include any academic Goals and Objectives within the proffered IEP.

81.    <u>Despite</u> the foregoing, and many other <u>un</u>disputed *failures* to comply with legal obligations on the part of Defendant, ALJ Frick states in her "FINAL DECISION" that it was Plaintiffs who "went through the motions" relating to the development of an IEP and the provision of a Free and Appropriate Public Education ("FAPE") to R.E. Also, despite the fact that Plaintiffs sought to begin the evaluation process for R.E. in April 2021, and did not start R.E. at September 2021, after making an assessment of the placement and programming proposed by Defendant, ALJ

Frick opined, <u>without any basis</u>, that Plaintiffs never intended to send R.E. to school in the District and "unilateral placement was a decision made in advance."

82.    It is evident from the above comments, among others remarks about Plaintiffs contained in her "FINAL DECISION", that ALJ Frick disapproved of Plaintiffs and what she erroneously concluded was their *alleged* preconceived plan not to cooperate with an in-district placement for R.E.

83.    Also, ALJ Frick did not admonish Plaintiffs or otherwise address their *alleged* behavior at the Hearing.  However, in her "FINAL DECISION", ALJ Frick describes in a fair amount of detail what can fairly be characterized as *alleged* inappropriate conduct by them. It is clear from these remarks that ALJ Frick found them annoying and distasteful <u>without any basis</u>. For example, on Pages 87-88 of the "FINAL DECISION" herein, the ALJ wrote, in part, as to R.E.'s father, "Notably, R.E.'s father was observed to be laughing, then both parents were looking down as if text messaging during this exchange. The father was observed a various times throughout Zoom proceedings to smirk, laugh, or take pleasure at times when the parents' counsel got loud and aggressive when arguing objections or conducting examination of a witness." As to R.E.'s mother, the ALJ wrote, in part, "The mother was observed to be stoic throughout the proceeding although at times she too joined with the father in smirking, laughing, or displaying pleasure during parts of their counsel's conduct. She at times was seen to display doubting or critical facial gestures and shake her head regarding testimony that did not support her position."

84.    ALJ Frick was, <u>without basis</u>, disparaging to Plaintiffs expert witnesses.

85.    In light of the many <u>un</u>disputed facts that run contrary to ALJ Frick's determination, it *appears* that the ALJ is using an irrelevant creditability assessment, together with disparaging remarks about Plaintiffs veracity and behavior to deny their request for relief.

86.    It is an appropriate exercise of this Court's authority to reverse ALJ Frick's "FINAL DECISION", which is <u>not</u> supported by substantial evidence, and thereby make it possible for R.E. to receive a Free and Appropriate Public Education ("FAPE") to which she is entitled.

<u>**Request for Relief**</u>

WHEREFORE Plaintiffs respectfully beseech this Court to grant the following relief:

1.    An ORDER vacating and reversing the "FINAL DECISION" decided on May 22, 2024 by The Honorable Elaine B. Frick, ALJ;

2.    An <u>immediate</u> ORDER directing Defendants to fund the placement of R.E. at the New Jersey Department of Education ("NJDOE") approved SCHI School, Lakewood, New Jersey, since R.E.'s attendance therein (October 11, 2021 through and June 30, 2022);

3.    An award of attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3), *see P.G. v. Brick Township Bd. of Educ.*, 124 F. Supp. 2d 251 (D.N.J. 2000); and

4.    Any and all other and further relief that the Court deems just and equitable.

Respectfully submitted,
**/s/MICHAEL I. INZELBUCH, ESQUIRE**

Dated: **July 24, 2024**          By:_____

**Michael I. Inzelbuch, Esquire**
I.D. No. 5635
*Attorney for Plaintiffs*
1340 West County Line Road
Lakewood, New Jersey 08701
Phone:  732-905-0325
Fax: 732-905-5872
E-Mail: michael@inzelbuchlaw.com